**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| H.E. AMIR M. HAMZA and FRANCIS ARTHUR YAKEL, | LEAD CASE |
| Plaintiffs, | 1:25-cv-968 (ECC/ML) |
| v. | |
| ATHANSIOS DIMADIS KOTSIDIS, et al., | |
| Defendants. | |

---

| | |
|---|---|
| H.E. AMIR M. HAMZA, | MEMBER CASE |
| Plaintiff, | 1:25-cv-1429 (ECC/ML) |
| v. | |
| CHRIS LIBERATI-CONANT, et al., | |
| Defendants. | |

---

| | |
|---|---|
| H.E. AMIR M. HAMZA, | MEMBER CASE |
| Plaintiff, | 1:25-cv-1506 (ECC/ML) |
| v. | |
| ATHANASIOS DIMADIS KOTSIDIS, a/k/a Thanos Dimadis, et al., | |
| Defendants. | |

---

H.E. Amir M. Hamza, *Pro se Plaintiff*
Francis Arthur Yakel, *Pro se Plaintiff*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Plaintiffs H.E. Amir M. Hamza and Francis Arthur Yakel commenced the above captioned lead case by filing a Complaint on July 22, 2025.  *Hamza et al. v. Kotsidis et al.*, 1:25-cv-968 (ECC/ML) (*Hamza I*) Dkt. No. 1. On August 7, 2025, the Court accepted Plaintiffs' Amended Complaint filed as of right.  Dkt. No. 37.[1]  Plaintiffs subsequently filed a motion to amend the Amended Complaint, which the Court granted on October 8, 2025, and the Second Amended Complaint became the operative pleading.  Dkt. Nos. 49, 50.  Hamza subsequently commenced the above captioned member cases by filing separate Complaints on October 13, 2025 and October 26, 2025.  *Hamza v. Liberati-Conant, et al.*, 1:25-cv-1429 (ECC/ML) (N.D.N.Y.) (*Hamza II*) Dkt. No. 1; *Hamza v. Kotsidis et al.*, 1:25-cv-1506 (ECC/ML) (N.D.N.Y.) (*Hamza III*) Dkt. No. 1. Plaintiffs filed applications to proceed in forma pauperis (IFP) in the above captioned actions. *Hamza I* Dkt. Nos. 3, 4; *Hamza II* Dkt. No. 2; *Hamza III* Dkt. No. 4.

These cases were referred to Magistrate Judge Miroslav Lovric who, on November 26, 2025, granted Plaintiffs' motions for IFP status and ordered the consolidation of these actions, designating *Hamza I* as the lead case.  *Hamza I* Dkt. No. 54; *Hamza II* Dkt. No. 6; *Hamza III* Dkt. No. 7.  Magistrate Judge Lovric further recommended that the *Hamza I* Second Amended Complaint*, Hamza II* Complaint, and *Hamza III* Complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous, or, in the alternative, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (iii) because they seek relief against defendants who are immune from such relief and for failure to state a claim upon which relief may be granted.  *Id.*

---

[1] Citations to docket entries refer to those filed in *Hamza I,* unless otherwise noted.

2

Hamza filed objections to Magistrate Judge Lovric's recommendation on December 3, 2025. Dkt. No. 55. On December 7, 2025, Plaintiffs filed a letter motion seeking leave to file a Third Amended Complaint consolidating various claims from *Hamza I*, *Hamza II*, and *Hamza III* into a single action, in light of Magistrate Judge Lovric's recommendations. Dkt. No. 56. That motion, along with Magistrate Judge Lovric's Report-Recommendation, is presently before this Court.

## II.    REPORT-RECOMMENDATION

This Court reviews de novo those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [Report-Recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.,* 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (citation omitted). Properly raised objections "must be specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). "[E]ven a pro se party's objections to a Report[-]Recommendation must be specific and clearly aimed at particular findings in the magistrate [judge]'s proposal . . . ." *Machicote v. Ercole*, No. 06 Civ. 13320, 2011 WL 3809920, at *2, (S.D.N.Y. Aug. 25, 2011) (citation omitted). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.*

Hamza filed a 741-page submission in objection to Magistrate Judge Lovric's report-recommendation recommending dismissal of *Hamza I, Hamza II* and *Hamza III.* Dkt. No. 55. Namely, Hamza takes issue with Magistrate Judge Lovric's characterization of the pleadings, and otherwise attempts to interject new facts and allegations for consideration in conjunction with Plaintiffs' claims. Ultimately, Hamza requests the Court permit amendment in order to file a more

streamlined and clarified pleading – that is, the proposed Third Amended Complaint that Plaintiffs filed soon after submitting objections to the report-recommendation. *See* Dkt. No. 56 at 3-32 (TAC).

Under de novo review, the Court agrees with Magistrate Judge Lovric's recommendations that the *Hamza I* Second Amended Complaint*, Hamza II* Complaint, and *Hamza III* Complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2), and the report-recommendation is therefore adopted in this respect. The Court shares Magistrate Judge Lovric's concerns regarding Hamza's abusive litigation history, and joins in cautioning Hamza that voluminous, frivolous filings that overwhelm the judiciary's resources, and congest the docket, will not be tolerated. Hamza represents, and the Court recognizes, that he is an experienced pro se litigant – having actively litigated numerous matters in federal and state court. Dkt. No. 56 at 1. Hamza states that these experiences have afforded him the ability to learn and understand the legal process. *Id.* Although a court "is ordinarily obligated to afford a special solicitude to pro se litigants," the "appropriate degree of special solicitude is not identical with regard to all pro se litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010). The "degree of solicitude may be lessened," for example, where a particular pro se litigant is "experienced in litigation and familiar with the procedural setting presented." *Id*. A court may exercise its discretion, "based on the totality of the relevant circumstances," to determine "what degree of solicitude, if any, should be afforded." *Id*. at 102–03. Thus, to the extent the Court recognizes that Plaintiff Hamza is an experienced pro se litigant, the Court expects that he be "conscious of the outer limits of forceful advocacy and fully aware when his acts transgress those limits." *Zimmerman v. Burge*, No. 06-cv-0176 (GLS/GHL), 2008 WL 850677, at *9 (N.D.N.Y. Mar. 28, 2008).

Notwithstanding these concerns, the Court recognizes that Magistrate Judge Lovric's report-recommendation was the first instance in which any pleading deficiencies were identified to the pro se Plaintiffs. Generally, when the court dismisses a pro se complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Here, in an abundance of caution regarding Plaintiffs' pro se status, and recognizing Plaintiffs' effort to consolidate their numerous claims across the three actions into one streamlined pleading, the Court exercises its authority to accept Plaintiffs' Third Amended Complaint for filing, and will proceed to review its sufficiency pursuant to 28 U.S.C. 1915(e)(2).

## III.  THIRD AMENDED COMPLAINT

Plaintiffs' allegations in the Third Amended Complaint will be summarized to the extent they are relevant to the Court's analysis.

### A.  Personal Involvement

"To establish a Section 1983 violation, a plaintiff must plead (and later prove) that each defendant was personally involved in the alleged constitutional violation." *Wiggins v. Griffin*, 86 F.4th 987, 996 (2d Cir. 2023) (citing *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)). The Second Circuit has also made clear that "there is no special rule for supervisory liability" under Section 1983. *Tangreti*, 983 F.3d at 618. "Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary." *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (quoting *Tangreti*, 983 F.3d at 618).

Plaintiffs identify Philip Tkacy, Douglas Cropper, Carla Ingersoll, and Morgan Klima as defendants in the caption and list of parties. However, these defendants are not otherwise referenced anywhere in the body of the Third Amended Complaint, and the pleading lacks factual allegations sufficient to allege that these individuals were personally involved in conduct that violated Plaintiff's constitutional rights. Accordingly, Plaintiffs fail to state a cognizable claim against Tkacy, Cropper, Ingersoll, and Klima, and the Third Amended Complaint is dismissed as against them. *See Cipriani v. Buffardi*, No. 06-cv-0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl*, No. 14-cv-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint).

Plaintiffs also name Village of Philmont Police Chief Vernon Doyle as a defendant. The minimal allegations against Doyle in the Third Amended Complaint are asserted in his supervisory capacity, and Plaintiffs do not assert that Doyle was personally involved in conduct violating their constitutional rights. *See* TAC ¶¶ 36 ("The Philmont Police Department, under Chief Doyle, responded to multiple calls and complaints but failed to curb Thanos and Marou's surveillance . . . ."), 84 (generally alleging supervisory liability against Doyle because he "knew of and condoned" allegedly unconstitutional practices). Plaintiffs' conclusory allegations are insufficient to show that Doyle personally violated their rights. Accordingly, the claims against Doyle fail to state a claim.

**B.      State Action under § 1983**

"It is well-settled that a plaintiff alleging a violation of his constitutional rights under Section 1983 must show that the defendant acted under color of state law." *Jeanty v. Sciortino*,

669 F. Supp. 3d 96, 112 (N.D.N.Y. 2023) (citing *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012)); *see also* 42 U.S.C. § 1983 (imposing liability on persons who act "under color of any [state] statute, ordinance, regulation, custom, or usage"). As a general rule private parties are not state actors subject to § 1983 liability. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002); *Reaves v. Dep't of Veterans Affairs*, No. 08-cv-1624, 2009 WL 35074, at *3 (E.D.N.Y. Jan. 6, 2009) ("Purely private conduct is not actionable under § 1983, 'no matter how discriminatory or wrongful.'") (citation omitted).  However, the actions of private individuals and entities may be attributed to the state for Section 1983 purposes if "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (citation omitted).  "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant*, 691 F.3d at 207 (quoting *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

### 1.    Thanos and Marou

Plaintiffs allege that Defendants Athanasios Dimadis Kotsidis (Thanos) and Maroula Kotsidou (Marou) acquired an adjacent property to Hamza's residence (the property) in June 2022. TAC ¶¶ 13, 25-26.  Plaintiffs further allege that the property is utilized for charitable purposes, in conjunction with an organization founded by Hamza and operated, in part, by Yakel.  *Id.* at ¶¶ 11, 26-27.  Plaintiffs contend that Thanos and Marou "began a pattern of conduct directed at Plaintiffs designed to interfere with the use, enjoyment, and charitable development" of the property.  *Id.* at ¶ 28.  Specifically, Plaintiffs allege that Thanos and Marou conducted video and camera

surveillance of Plaintiffs on the property, and "obstructed or attempted to obstruct vehicular and pedestrian access" to the property, including blocking driveways, interfering with construction deliveries, and using "exaggerated, fabricated, or wholly false" complaints to officials to frustrate the charitable organization's purpose. *Id.* at ¶¶ 29-31. Thanos and Marou also "publicly and privately defamed Plaintiffs by spreading statements accusing them of criminal behavior, dishonesty, and instability, including in communications to neighbors, public officials, and third parties . . . ." *Id.* at ¶ 33.

Plaintiffs allege that officials responded to some of Thanos and Marou's "false" complaints, and "initiated investigations and/or enforcement actions that, upon information and belief, were premised on false information from Thanos and Marou and were selectively pursued against Plaintiffs while similar or worse conditions nearby were ignored." TAC ¶ 32. Plaintiffs further allege that they "repeatedly notified" Village of Philmont officials of Thanos and Marou's ongoing surveillance and harassment, however "[i]nstead of providing even-handed support of enforcing neutral rules, the Village and its agents routinely took Thanos and Marou's side, treating Plaintiff's own reports as nuisances, delaying responses to FOIL requests, and selectively applying ordinances to Plaintiffs while overlooking comparable conduct by others." *Id.* at ¶¶ 34-35; *see also id.* at ¶ 36 (alleging that Village of Philmont Police Department responded to multiple calls and complaints but failed to curb the surveillance, and instead used the dispute to scrutinize Plaintiffs' conduct).

Liberally construed, Plaintiffs seek to proceed against Thanos and Marou under the "joint action" doctrine. "'To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law.'" *Anilao v. Spota*, 774

F. Supp. 2d 457, 498 (E.D.N.Y. 2011) (quoting *Bang v. Utopia Rest.*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996)).  "The touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the police." *Forbes v. City of New York*, No. 05-cv-7331, 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008) (citing *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir.1999)). "The provision of information to, or the summoning of, police officers is not sufficient to constitute joint action with state actors for purposes of § 1983, even if the information provided is false or results in the officers taking affirmative action." *Id.* (citing *Ginsberg*, 189 F.3d at 272).

The Third Amended Complaint does not sufficiently allege joint action between Thanos and Marou and any state officials, such that the former could be held liable under § 1983.  Liberally construed, Plaintiffs' allegations suggest that village and law enforcement officials did not respond favorably to their complaints about Thanos and Marou, but instead credited Thanos and Marou's complaints and otherwise scrutinized Plaintiffs' conduct in an unfair manner.  Plaintiffs, however, do not allege any facts that Thanos and Marou directed or pressured state actors in pursuing the alleged violation of their constitutional rights.  Nor is there any allegation that Thanos and Marou were involved in a plan, prearrangement, or conspiracy with any state officials.  Even assuming Thanos and Marou intended to harm Plaintiffs by reporting their conduct, "a private party's motivation is irrelevant to the determination of whether that private party acted under color of state law." *Young v. Suffolk Cnty.*, 922 F. Supp. 2d 368, 386 (E.D.N.Y. 2013) (citing *Kash v. Honey*, 38 F. App'x 73, 75–76 (2d Cir. 2002) (finding no state action by private lawyer who plaintiff alleged "maliciously, for purpose or purposes personal to him, including the purpose of penalizing [plaintiff] for exercising his First Amendment rights . . . falsely charged [plaintiff] in an accusatory instrument")).  Otherwise, Plaintiffs' allegations do not plausibly allege joint action with state

actors for purposes of § 1983. *See Carrillos v. Inc. Vill. of Hempstead*, 87 F. Supp. 3d 357, 371 (E.D.N.Y. 2015) ("[T]he provision of information to police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of Section 1983."); *Sherman v. City of New York*, No. 18-cv-5359, 2019 WL 2164081, at *7 (E.D.N.Y. May 16, 2019) ("Plaintiff's allegations simply amount to the assertion that Eilenberg provided the officers with false information and the officers inappropriately accepted Eilenberg's version of events despite evidence to the contrary. This is patently insufficient to state a claim of joint action."); *United States v. Hanratty*, No. 24-cr-153, 2024 WL 4892742, at *3 (S.D.N.Y. Nov. 26, 2024) ("That EBCC was eager to cooperate with the Government does not convert EBCC's conduct in the Civil Case into joint activity or state action.").[2]  In the absence of state action, Plaintiffs' allegations fail to state a § 1983 claim against Thanos and Marou.

### 2.      U-Haul and Hudson Rentals

Plaintiffs' only allegation against Defendants U-Haul, Inc. and Hudson Rentals and Garden Design is that these entities "were involved in actions related to a U-Haul truck and equipment on or near Elm Street that Thanos and Marou used as pretext for further complaints, obstruction, and allegations against Plaintiffs, with resulting interference in Plaintiffs' property rights and [the foundation's] operations."  TAC ¶ 37.  Even assuming that Plaintiffs articulated a constitutional violation as against these entities, which they have not, Plaintiffs' conclusory and vague allegations do not suffice to plead state action on their part, under any of the relevant tests enumerated above.

---

[2] The Court notes that Magistrate Judge Lovric provided an extensive list of allegations contained in Plaintiffs' *Hamza I* Second Amended Complaint, strongly suggesting that state actors were *not* acting in concert with Thanos and Marou to violate Plaintiffs' constitutional rights.  Dkt. No. 54 at 32-34.

Accordingly, Plaintiffs' allegations against U-Haul, Inc. and Hudson Rentals and Garden Design fail to state a claim under § 1983 for, among other reasons, lack of state action.

### C.    Conspiracy

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Butler v. Hesch*, 286 F. Supp. 3d 337, 363 (N.D.N.Y. 2018) (citation omitted); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002). "To state a conspiracy claim under 42 U.S.C. § 1985[,]" a plaintiff must allege "(1) some racial or other class-based discriminatory animus underlying the [defendants'] actions; and (2) that the conspiracy was aimed at interfering with [the plaintiff's] protected rights." *Brito v. Arthur*, 403 F. App'x 620, 621 (2d Cir. 2010) (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993)).

In order to state a claim under either statute, allegations of direct evidence of conspiracy are not necessary, "but detailed allegations of the conspiracy's 'time and place' must be provided for a complaint to cross the plausibility threshold." *Brill v. Ulster Cnty.*, 799 F. Supp. 3d 73, 82 (N.D.N.Y. 2025) (citing *Ciambriello*, 292 F.3d at 325). "[A] plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Kiryas Joel Alliance v. Vill. of Kiryas Joel*, 495 F. App'x 183, 190 (2d Cir. 2012) (quoting *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003)). "Vague and conclusory allegations that defendants entered into an unlawful agreement will not suffice to state a conspiracy claim under either § 1983 or § 1985(3)." *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 97 (N.D.N.Y. 2013) (citing *Kiryas Joel Alliance*, 495 F. App'x at 190-91); *see also Emmerling v. Town of Richmond*, 434 F. App'x 10, 12 (2d Cir. 2011).

Here, Plaintiffs fail to state a plausible cause of action for conspiracy under either § 1983 or § 1985(3).  At the outset, even viewing the allegations in the light most favorable to Plaintiffs, the Third Amended Complaint fails to allege any specific facts regarding a "meeting of the minds" among *all*, much less any, of the individual defendants.  Instead, Plaintiffs' allegations regarding a meeting of the minds merely reiterate the relevant statutory language without any factual support.  *See, e.g.,* TAC ¶ 77 ("Defendants reached an agreement, tacit or express, to deprive Plaintiffs of their constitutional rights…."), ¶ 80 ("Defendants conspired . . . to deprive [Hamza] of equal protection and equal privileges and immunities.").

Furthermore, Plaintiffs have not sufficiently set forth how all the individual defendants acted in concert with one another to violate Plaintiffs' rights.  Plaintiffs contend that the offending conduct includes "using Thanos and Marou's surveillance and reports as a pipeline to law enforcement and the DAO," "selectively targeting Plaintiffs with tickets, investigations, and criminal charges," "denying equal access to volunteer and civic opportunities," and "maintaining prosecutions and investigations as leverage."  TAC ¶ 77.  As previously discussed, evidence that private actors reported purported criminal activity to law enforcement does not establish a "meeting of the minds" or concerted behavior sufficient to state a conspiracy claim.  Otherwise, these general and conclusory allegations do not plausibly allege that all the individual defendants acted in concert with one another, as claimed.

Finally, the Court notes that while "a plaintiff may assert a civil conspiracy claim under § 1983 for the deprivation of a constitutional right, he must first show a violation of the underlying constitutional right." *DeMartino v. New York State Dep't of Labor*, 167 F. Supp. 3d 342, 373 (E.D.N.Y. 2016).  It is unclear which of Plaintiffs' constitutionally protected rights the Defendants allegedly acted in concert to violate.  However, to the extent Plaintiffs have failed to plausibly

allege an underlying violation of their constitutional rights, they cannot sustain a claim of conspiracy to violate those rights.

For all of these reasons, Plaintiffs' conspiracy claims under § 1983 and § 1985(3) fail to state a claim as a matter of law.

### D.    *Monell* Liability

"Under the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), local governments may be held liable in § 1983 actions." *Frost v. New York City Police Dep't*, 980 F.3d 231, 257 (2d Cir. 2020). *Monell* emphasized, however, that "a municipality cannot be held liable . . . on a respondeat superior theory." *Monell*, 436 U.S. at 691. Thus, "[t]he elements of a Monell claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023) (quoting *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020)). "A policy or custom may be established by any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff. *Moran v. Cnty. of Suffolk*, No. 11 Civ. 3704, 2015 WL 1321685, at *9 (E.D.N.Y. Mar. 24, 2015) (citations omitted).

Plaintiffs allege that "[t]he constitutional violations described" in the Third Amended Complaint "were caused by policies, customs, or practices" of the Village of Philmont.[3]  TAC ¶

---

[3] Plaintiff also alleges *Monell* liability against the New York State Police and the "DA in Official Capacity."  TAC ¶¶ 82-84.  However, the "holding in *Monell* was limited to local government units which are not considered part of the State for Eleventh Amendment purposes," and therefore does not apply to state agencies such as the NYSP or the District Attorney's Office. *See Daly v.*

83. With respect to Plaintiffs' claims premised on a failure-to-train theory, the Court is mindful that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A failure to train constitutes a policy or custom that is actionable under § 1983 only where "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). The Second Circuit has held that a finding of deliberate indifference requires: (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (quoting *Walker v. City of N.Y.*, 974 F.2d 293, 297–98 (2d Cir. 1992)).

---

*Town of Dewitt*, No. 18-cv-845 (TJM), 2019 WL 4170162, at *3–4 (N.D.N.Y. Sept. 2, 2019) (dismissing municipal liability claim against NYSP); *see also Strasser v. New York*, No. 10-cv-141 (FJS/DEP), 2012 WL 253391, at *3 (N.D.N.Y. Jan. 26, 2012) (adopting magistrate judge's recommendation to dismiss *Monell* claims against the state or its entities, including the NYSP, and noting that *Monell* "provides no basis to permit plaintiff to assert claims against the state or its agencies"); *Mobley v. Rodriguez*, No. 7:25-cv-6784, 2025 WL 3042024, at *3 (S.D.N.Y. Oct. 31, 2025) ("In the State of New York, a District Attorney's Office, when prosecuting a criminal matter, is deemed an arm of the State of New York and, therefore, in that context, enjoys Eleventh Amendment immunity from suit."). Accordingly, Plaintiffs fail to state a *Monell* claim against the NYSP and the District Attorney's Office.

To set forth a failure-to-train claim, "a plaintiff must plausibly allege a specific deficiency in the municipality's training." *Tieman v. City of Newburgh,* No. 13-cv-4178, 2015 WL 1379652, at *22 (S.D.N.Y. Mar. 26, 2015). Here, Plaintiffs' claim fails because they have not alleged a specific training deficiency, nor does the Third Amended Complaint contain sufficient factual matter to state a training deficiency "that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plaintiffs' broad allegation that that the municipality failed to train and supervise officers[4] on "neutral handling of neighbor disputes and petitioning," without more, is the sort that is regularly dismissed as too general and conclusory. *See Taranto v. Putnam Cnty.*, No. 21-cv-2455, 2023 WL 6318280, at *19 (S.D.N.Y. Sept. 28, 2023) (collecting cases).

The remainder of Plaintiffs' *Monell* claims are liberally construed as alleging an actionable policy or custom through actions or decisions made by municipal officials with decision making authority. Although not specifically articulated in Plaintiffs' cause of action asserting *Monell* liability, the pleading as a whole can be construed to allege liability based on the Village of Philmont Trustees' alleged decision to reject Plaintiff Hamza's volunteer firefighter application in retaliation for his prior complaints and lawsuits. At this stage of the litigation, the Court will permit this claim to proceed to service. In doing so, the Court expresses no opinion on the merits, nor does it suggest whether the claim would survive a properly filed dispositive motion.

### E.    Detzel and MacFarlane

Plaintiffs allege that Defendants Jason Detzel and Bob MacFarlane were Village trustees, employees and/or officials. TAC ¶ 17. Plaintiffs allege that Detzel and MacFarlane were repeatedly notified of Thanos and Marou's ongoing surveillance and harassment, and "routinely

---

[4] Moreover, and to reiterate, Plaintiff has not alleged an underlying constitutional violation by any Village of Philmont law enforcement officer that would support such a *Monell* claim based on a failure-to-train theory.

took Thanos and Marou's side" to the Plaintiff's detriment. *Id.* at ¶ 34-35.  Plaintiffs further allege that Plaintiff Hamza's application to become a volunteer firefighter with the village was "rejected . . . without explanation" by the Village Board of Trustees, and that in an "informal conversation, [] Detzel indicated that the rejection stemmed from a perception that Hamza was a 'rabble rouser' tied to his complaints, FOIL requests, and litigation[.]" *Id.* at ¶¶ 38-41.

Plaintiffs assert a First Amendment retaliation claim against Detzel and MacFarlane based on the denial of his volunteer application.  TAC ¶¶ 57-62.  At this stage of the litigation, the Court will permit only this claim to proceed to service as to Detzel and MacFarlane, as Plaintiffs' allegations otherwise fail to state any other § 1983 claims against them.   In doing so, the Court expresses no opinion on the merits, nor does it suggest whether the claim would survive a properly filed dispositive motion.

### F.       New York State Police

Plaintiffs name the New York State Police (NYSP) in the Third Amended Complaint "only to the extent permitted for declaratory and injunctive relief and under state law as appropriate." TAC ¶ 20.  "The Eleventh Amendment generally bars suits in federal court by private individuals against non-consenting states." *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015) (citing *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)).  "The doctrine of *Ex parte Young* is a limited exception to the general principle of sovereign immunity and allows 'a suit [for injunctive relief] challenging the constitutionality of a state official's actions in enforcing state law' under the theory that such a suit is not 'one against the State,' and therefore not barred by the Eleventh Amendment." *CSX Transp., Inc. v. New York State Off. of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002) (quotation omitted). The *Ex parte Young* doctrine "does not apply when the state is the real, substantial party in interest." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S.

16

89, 101 (1984)) (additional quotation and quotation marks omitted); *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (explaining that *Ex parte Young* has "no application in suits against the States and their agencies, which are barred regardless of the relief sought"). "[A] plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly." *Santiago v. New York State Dep't of Corr. Servs.*, 945 F.2d 25, 32 (2d Cir. 1991). Accordingly, Plaintiffs' claims against the NYSP do not fall within the *Ex parte Young* exception, and are barred by sovereign immunity.

## G.    Trooper Miguel Rodriguez

Plaintiff alleges that on August 1, 2025, "officers – including [Defendant] Trooper Rodriguez – arrived at Hamza's home and seized him on a Menacing 3° charge arising from allegations connected to the Elm Street dispute. No contemporaneous warrant or probable cause documentation was shown." TAC ¶ 48. Hamza "was subjected to custodial questioning without Miranda warnings, and the timing of the arrest, its execution, and its maintenance reflected retaliatory and selective motives tied to his ongoing speech and previous federal filings." *Id.* at ¶ 49.

"To establish a claim of false arrest under New York law, the plaintiff must show that: (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Whitbeck v. Otsego Cnty.*, No. 3:25-cv-00673 (AMN/ML), 2025 WL 2959467, at *2 (N.D.N.Y. Oct. 20, 2025) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (N.Y. 1975)). Confinement is otherwise privileged when officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Here, although thin, Plaintiffs' allegations are sufficient

17

at this juncture to permit the Fourth Amendment false arrest claim against Rodriguez to proceed to service. In making this determination, the Court expresses no opinion on the merits, or to whether Plaintiff Hamza's false arrest claim can survive a properly filed dispositive motion.

Plaintiffs have otherwise failed to state a First Amendment retaliation, Fourteenth Amendment equal protection or Fourteenth Amendment due process claim against Rodriguez, as alleged in the Third Amended Complaint. Namely, Plaintiffs have failed to allege that Rodriguez had any personal involvement in the conduct giving rise to these claims. Plaintiffs' general allegations surrounding the "custodial questioning without Miranda warnings" do not identify Rodriguez or otherwise suggest he was personally involved in said conduct. Otherwise, the pleading is devoid of any reference to Rodriguez plausibly supporting these claims.

### H.    Liberati-Conant and Davidson-Cunningham

#### 1.    Individual Capacity

"The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy." *Anilao v. Spota*, 27 F.4th 855, 863 (2d Cir. 2022) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976)). "Instead of relying on strict categories of actions with respect to which absolute immunity attaches, the relevant question is 'whether there is pending or in preparation a court proceeding in which the prosecutor acts as an advocate.'" *Id.* (quoting *Warney v. Monroe Cty.*, 587 F.3d 113, 123 (2d Cir. 2009)). Ultimately, the Court asks "whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor." *Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012). "The decision to initiate prosecution, what charges to bring, and how to perfect and consolidate those charges is a quintessential prosecutorial function." *Ogunkoya v. Monaghan*, 913 F.3d 64, 71 (2d Cir. 2019) (citations omitted).

Plaintiffs purport to sue District Attorney of Columbia County Chris Liberati-Conant "in his individual capacity for non-advocacy, administrative, and policy-making acts." TAC ¶ 22. It is, however, clear from the pleading that Plaintiffs' allegations against Liberati-Conant arise from his functional roles in the prosecutor's office. Specifically, Plaintiff contends that the district attorney's office, "through" Liberati-Conant, failed to sufficiently evaluate criminal charges against Thanos and Marou. TAC ¶ 45. Plaintiffs further allege that Liberati-Conant refused to recuse himself from Hamza's criminal prosecution, notwithstanding a purported conflict. *Id.* at ¶¶ 50-51. At a minimum, Liberati-Conant's decision whether or not to bring charges against Thanos and Marou is undoubtedly protected by absolute prosecutorial immunity. *Cruz v. Vill. of Spring Valley*, No. 21-cv-2073, 2022 WL 428247, at *4 (S.D.N.Y. Feb. 11, 2022) (quoting *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) ("It is clear that 'the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions' covered by absolute immunity.")); *see also Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (noting that prosecutors are "immune for conduct in preparing for [prosecutorial] functions," including "evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged" (citations omitted)).

Liberati-Conant's decision not to recuse himself from prosecuting Hamza's criminal action, although a closer call, is also protected by prosecutorial immunity. *See McDonough v. Smith*, No. 1:15-cv-01505 (MAD), 2016 WL 5717263, at *20 (N.D.N.Y. Sept. 30, 2016), *vacated and remanded on other grounds*, 783 F. App'x 91 (2d Cir. 2019) (evaluating whether district attorney's decision to recuse himself is entitled to absolute immunity in the absence of authority from the Second Circuit, and concluding that "a district attorney is entitled to absolute immunity for the act of recusing himself from a prosecution because such act is intimately tied to his

19

functions as an advocate for the people."); *see also Delta Fuel Co., Inc. v. Maxwell,* 485 F. App'x 685, 686 (5th Cir. 2012) (citing *Imbler v. Pachtman*, 424 U.S. 409, 428 (1976)) ("[B]ecause the recusal was done in [the defendant's] role as district attorney, [the defendant] was entitled to absolute prosecutorial immunity"); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 934 (9th Cir. 2012) applying absolute immunity to prosecutor's acts of recusing himself and appointing a special prosecutor upon evaluation of existing conflicts of interest).

Plaintiffs also name the Columbia County District Attorney's Office Chief of Staff Zechariah Davidson-Cunningham as a defendant in this action. Plaintiffs' allegations against Davidson-Cunningham are based on his involvement in the "intake, maintenance, and communications" concerning Hamza's criminal case. TAC ¶ 23. Plaintiffs allege Davidson-Cunningham also failed to properly evaluate their complaints against Thanos and Marou, and that Davidson-Cunningham "continued to oversee intake and decisions, allowing the [criminal case against Plaintiff Hamza] to remain pending without meaningful progress toward trial or dismissal." *Id.* at ¶¶ 45-47, 51. Assuming that Plaintiffs have alleged a plausible constitutional violation by Davidson-Cunningham, it is for conduct committed in the course of his duties as staff of the prosecutor of the state. Accordingly, he is also entitled to absolute immunity. *See Andrews v. Grillot*, No. 3:22-cv-873, 2023 WL 5228179, at *4 (D. Conn. Aug. 15, 2023) (concluding that agents of the EPA acting at the direction of the EPA's lawyers during the course of an enforcement action were shielded from suit by absolute immunity) (citing *Maqablh v. Heinz*, No. 3:16-cv-289, 2017 WL 1347695, at *3 (W.D. Ky. Apr. 10, 2017) ("The immunity afforded to prosecuting attorneys also applies to members of the prosecutor's staff for acts committed in the course of their duties as staff of a prosecutor of the state.") (cleaned up))); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity is analyzed under a "functional approach" that "looks to

the nature of the function performed, not the identity of the actor who performed it" (internal quotation marks and citations omitted)).

### 2.    Official Capacity – Prospective Relief

Plaintiff also names Liberati-Conant as a defendant "in his official capacity for prospective injunctive and declaratory relief concerning ongoing practices of the [district attorney's office]." TAC ¶ 22. The Eleventh Amendment does not "bar actions seeking only prospective injunctive relief against state officials to prevent a continuing violation of federal law." *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005) (citing *Ex parte Young*, 209 U.S. 123, 160 (1908)); *see also Frew ex rel. Frew v. Hawkins,* 540 U.S. 431, 437 (2004) ("To ensure the enforcement of federal law, however, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law."). The *Ex parte Young* doctrine requires that plaintiffs' complaint "'(a) alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). "In seeking prospective relief like an injunction, 'a plaintiff must show that he can reasonably expect to encounter the same injury again in the future—otherwise there is no remedial benefit that he can derive from such a judicial decree." *Leder v. Am. Traffic Sols., Inc.*, 81 F. Supp. 3d 211, 222 (E.D.N.Y. 2015), *aff'd*, 630 F. App'x 61 (2d Cir. 2015) (quoting *MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 593 (S.D.N.Y. 2011)); *see also Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, *N.Y.*, 945 F.3d 83, 110 (2d Cir. 2019) ("'[C]onjectural' injuries do not suffice under Article III.") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)) ("[The plaintiffs] lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury.").

In this case, Plaintiffs' requests for prospective relief against Liberati-Conant fail to state a claim.  Even assuming Plaintiffs' plausibly alleged a constitutional violation, which the Court seriously questions, the injunctive relief they seek is not sufficiently pled to be tied to an allegation of ongoing violations of federal law.  At the outset, Plaintiff's request for declaratory relief finding that "Defendants' actions violated Plaintiffs' rights under" §§ 1983 and 1985(3) is "wholly retrospective," and therefore does not fall under the *Ex parte Young* exception.  *See  T.W. v. New York State Bd. of L. Examiners*, 110 F.4th 71, 92 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 2700 (2025) (concluding that request for "only a declaration – in the past tense – that the Board '*violated* Title II'" is retrospective).

With respect to Plaintiffs' requests for prospective injunctive relief, Plaintiffs must plead more than conclusory, general requests that the "defendants" be enjoined from "selective enforcement of laws against Plaintiffs."  TAC at 30.  *Craig v. Connecticut Dep't of Mental Health Nov. 28, 2017 & Addiction Servs.*, No. 3:16-cv-2100, 2017 WL 5892193, at *5 (D. Conn. Nov. 28, 2017) ("[Plaintiff's] request for injunctive relief - 'an order that each defendant shall fully comply with the provisions of [sic] pursuant to 42 U.S.C. § 1981 . . .'- is impermissibly vague and overbroad."); *Peregrine Myanmar Ltd. V. Segal*, 89 F.3d 41, 51 (2d Cir. 1996) ("[U]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law.").  For these reasons, Plaintiffs' official capacity claim against Liberati-Conant fails to state a claim.

## I.        Plaintiff Yakel

Yakel does not have standing to bring the limited claims this Court is permitting to proceed to service.  To have standing to sue, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)*, as revised* (May

24, 2016) (citing, among others, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  A plaintiff must also "assert his [or her] own legal rights and interests, and cannot rest his [or her] claim to relief on the legal rights or interest of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also Rejamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014) ("The 'prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'") (quoting *Warth*, 422 U.S. at 509).  At the pleading stage, "the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing. *Id*. (citation omitted).

Here, Yakel has failed to identify any concrete and particularized harms he has suffered that are fairly traceable to (1) the Village of Philmont's alleged rejection of Hamza's volunteer firefighter application in retaliation for his complaints and litigation, or (2) Rodriguez's alleged false arrest of Hamza on August 1, 2025.  Indeed, Plaintiff Yakel is barely referenced throughout the body of the Third Amended Complaint.  Because the surviving claims do not allege independent claims for relief on behalf of Yakel, he lacks standing to maintain this action.  *See, e.g., Hesse v. E. Windsor Police Dep't*, No. 3:24-cv-2044, 2025 WL 2379269, at \*3 (D. Conn. Aug. 15, 2025) (wife lacked standing to bring claims alleging violations related to the arrest and prosecution of her husband); *Morgan v. City of New York*, 166 F. Supp. 2d 817, 819 (S.D.N.Y. 2001) ("First, Angela Morgan lacks standing to bring individual claims under § 1983 based upon a deprivation of her daughter's constitutional rights.").  Accordingly, Plaintiff Yakel is dismissed from this action without prejudice.

## IV.    CONCLUSION

For these reasons, it is

**ORDERED** that Magistrate Judge Lovric's Report-Recommendation is **ADOPTED** to the extent set forth above, and Plaintiffs' Second Amended Complaint in *Hamza I* No. 1:25-cv-968

(ECC/ML) (N.D.N.Y.) Dkt. No. 50, Complaint in *Hamza II* No. 1:25-cv-1429 (ECC/ML) (N.D.N.Y.) Dkt. No. 1, and Complaint in *Hamza III* No. 1:25-cv-1506 (ECC/ML) (N.D.N.Y.) Dkt. No. 1 are **DISMISSED,** and it is further

ORDERED that in *Hamza II* No. 1:25-cv-1429 (ECC/ML) (N.D.N.Y.) and *Hamza III* No. 1:25-cv-1506 (ECC/ML) (N.D.N.Y.), the Clerk of the Court enter judgment closing these actions for the reasons set forth in this Memorandum-Decision and Order, and it is further

ORDERED that in *Hamza I* No. 1:25-cv-968 (ECC/ML) (N.D.N.Y.) the Third Amended Complaint is accepted for filing. The Clerk of the Court shall docket the Third Amended Complaint, as set forth in Dkt. No. 56 at 3-32, as a separate entry on the docket, attaching as exhibits the submissions found at Dkt. No. 55-1;[5] and it is further

ORDERED that the Clerk of the Court serve a Rule 11 affidavit and a copy of the Third Amended Complaint on Plaintiff Hamza,[6] and it is further

ORDERED that, pursuant to the Court's careful review of the Third Amended Complaint under 28 U.S.C. §1915(e)(2), the following claims **SURVIVE** initial review and require a

---

[5] In his letter motion seeking to file the Third Amended Complaint, Hamza contends that the draft pleading "references certain exhibits cited in [his] objections to the RRO," and states that "if the Court grants leave to amend, [he] will formally incorporate those exhibits and provide the Court with detailed descriptions of each exhibit so their relevance and evidentiary value are clear." Dkt. No. 56. To the extent the pleading relies on these documents, they will be docketed as exhibits to the Third Amended Complaint. Hamza's request to otherwise formally incorporate the exhibits and provide descriptions is denied.

[6] The Third Amended Complaint is not signed. *See generally* Dkt. No. 56 at 3-32. Rule 11(a) of the Federal Rules of Civil Procedure requires that every pleading be signed "by at least one attorney of record in the attorney's name . . . or by a party personally if the party is unrepresented." Therefore, as the only plaintiff with surviving claims, Hamza must, within fourteen days, execute and file an affidavit which states that he has read the Third Amended Complaint and the text of Federal Rule of Civil Procedure 11. By executing the same, Hamza shall be declaring that he is representing to the Court all of the representations delineated in Federal Rule of Civil Procedure 11(b) with respect to the Third Amended Complaint. Hamza is advised that if he does not comply, this action may be dismissed without prejudice.

response: (1) Hamza's First Amendment retaliation claim against Defendants Jason Detzel and Bob MacFarlane arising from the rejection of Hamza's volunteer firefighter application, (2) Hamza's *Monell* claim against Defendant Village of Philmont arising from the rejection of Hamza's volunteer firefighter application, and (3) Hamza's Fourth Amendment false arrest claim against Defendant Trooper Miguel Rodriguez arising from Hamza's arrest on August 1, 2025; and it is further

**ORDERED** that Plaintiff is directed to submit proposed summonses to the Clerk of the Court for Defendants Village of Philmont, Jason Detzel, Bob MacFarlane, and Miguel Rodriguez;[7] and upon receipt of the Rule 11 affidavit and proposed summonses, the Clerk shall issue summonses and forward them, along with the necessary copies of the Third Amended Complaint and a copy of this Memorandum-Decision and Order to the United States Marshal for service upon Defendants Village of Philmont, Jason Detzel, Bob MacFarlane, and Miguel Rodriguez. The Clerk shall forward a copy of the summons, Third Amended Complaint, and this Memorandum-Decision and Order by electronic mail to the New York State Attorney General's Office, and it is further

**ORDERED** that a response to the Third Amended Complaint be filed by Defendants Village of Philmont, Jason Detzel, Bob MacFarlane, and Miguel Rodriguez as provided for in the Federal Rules of Civil Procedure after service of process, and it is further

**ORDERED** that, except as to the foregoing, the remaining claims asserted in the Third Amended Complaint are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2); and it is further

**ORDERED** that the Clerk of the Court shall **TERMINATE** the following defendants from the *Hamza I* No. 1:25-cv-968 (ECC/ML) (N.D.N.Y.) docket: Athanasios Dimadis Kotsidis, Maroula Kotsidou, Chief Vernon Doyle, U-Haul, Inc., New York Department of Environmental

---

[7] The Clerk is directed to provide Plaintiff with blank summonses to complete.

Conservation, Philip Tkacy, Douglas Cropper, Carla Ingersoll, Morgan Klima, Hudson Rentals and Garden Design, New York State Police, Chris Liberati-Conant, Zechariah Davidson-Cunningham, The Government of the Hellenic Republic, (Greece), Association of Foreign Press Correspondents in the USA, Inc. (AFPC-USA), The George Washington University Graduate School of Political Management (GPSM), and The United States Department of State, and it is further

ORDERED that the claims brought by Plaintiff Yakel are **DISMISSED,** and the Clerk of the Court shall **TERMINATE** Plaintiff Yakel from the docket.

**IT IS SO ORDERED.**

Dated: May 12, 2026

Elizabeth C. Coombe
U.S. District Judge

26