UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
H.E. AMIR M. HAMZA,
FRANCIS ARTHUR YAKEL,

Plaintiffs,

Civil Action No.: 1:25-cv-968 (ECC/ML)

       -against-

**CONSOLIDATED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF AND
DAMAGES**

ATHANASIOS DIMADIS KOTSIDIS,
MAROULA ("MAROU") KOTSIDOU,
VILLAGE OF PHILMONT,
CHIEF VERNON DOYLE,
JASON DETZEL,
BOB MacFARLANE,
PHILIP TKACY,
DOUGLAS CROPPER,
CARLA INGERSOLL,
MORGAN KLIMA,
U-HAUL, INC.,
HUDSON RENTALS AND GARDEN DESIGN,
NEW YORK STATE POLICE,
TROOPER MIGUEL RODRIGUEZ,
CHRIS LIBERATI-CONANT, in his individual
and official capacities as District Attorney of
Columbia County, New York,
ZECHARIAH DAVIDSON-CUNNINGHAM, in his
individual capacity,

               Defendants.
---------------------------------------------------------------X

*PLAINTIFFS' CONSOLIDATED COMPLAINT*
*FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES*
*(42 U.S.C. §§ 1983, 1985(3); U.S. CONST. amends. I, IV, V, VI & XIV;*
*N.Y. CONST. & STATE-LAW CLAIMS)*

Plaintiffs H.E. Amir M. Hamza ("Hamza") and Francis Arthur Yakel ("Yakel"), appearing pro se, allege:

## INTRODUCTION

1. This consolidated civil-rights and supplemental state-law action joins and combines two related federal lawsuits arising from the same core pattern of conduct:

   a. A campaign of surveillance, harassment, defamation, and obstruction directed at Plaintiffs by Defendants Athanasios ("Thanos") Dimadis Kotsidis and Maroula ("Marou") Kotsidou at and around 14 Elm Street in Philmont, New York, and by cooperating Village of Philmont officials, New York State Police, and other state actors; and

   b. Retaliatory and selective criminal enforcement, including the August 1, 2025 home arrest of Plaintiff Hamza on a Menacing 3° charge, the maintenance of that prosecution, and related failures of the Columbia County District Attorney's Office ("DAO") to provide neutral intake, conflict-free prosecution and timely disposition, in response to Hamza's protected speech and petitioning activities concerning the same Elm Street conflict.

2. Plaintiffs allege that private Defendants Thanos and Marou acted jointly and in concert with Village of Philmont officials, New York State Police, and DAO officials to weaponize municipal, police, environmental, and prosecutorial machinery to silence Plaintiffs' speech, punish them for petitioning government, interfere with the charitable activities of the Carol Hamza Memorial Fund, Inc. (CHMF), and damage Hamza's parenting relationship and reputation.

3. In a separate proceeding, Plaintiff Hamza previously sued District Attorney Chris Liberati-Conant and DAO staff member Zechariah Davidson-Cunningham for First Amendment retaliation, equal protection, conspiracy, denial of neutral prosecutor, speedy-trial violations, and related claims stemming from the DAO's handling of the Menacing 3° case. This Complaint consolidates those claims with the Elm Street / Village of Philmont / New York State Police / U-Haul harassment, surveillance, and retaliation claims.

4. Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees (if counsel appears) for violations of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments, 42 U.S.C. §§ 1983 and 1985(3), the New York Constitution, and New York common law (including nuisance, defamation, intrusion upon seclusion, intentional infliction of emotional distress, tortious interference, and related torts).

5. The New York State Department of Environmental Conservation ("DEC") is no longer named as a defendant in this consolidated Complaint. However,

consistent with prior pleadings, Plaintiffs refer to the actions of DEC personnel and to DEC investigations as part of the factual background showing how Defendants Thanos and Marou misused multiple agencies against Plaintiffs and how municipal and state actors responded or acquiesced.

6. Plaintiffs incorporate by reference, as if fully set forth herein, the facts supported by Exhibits previously labeled in Plaintiffs' Second Amended Complaint and Plaintiffs' Exhibit A compilation, including but not limited to property records, photographs, emails, FOIL responses, police reports, transcripts, and correspondence (collectively, "Exhibits," e.g., Exhibits "A"–"4A").

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4) because Plaintiffs bring claims under 42 U.S.C. §§ 1983, 1985(3), and the United States Constitution.

8. The Court has authority to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202.

9. The Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as the federal claims.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in Columbia County, New York, which lies within the Northern District of New York, and Defendants reside in or do business in this District.

THE PARTIES

11. Plaintiff H.E. Amir M. Hamza is an individual residing in the Village of Philmont, Columbia County, New York. He is a community advocate, a parent who has been involved in Family Court matters, and founder of the Carol Hamza Memorial Fund, Inc. (CHMF), which seeks to develop charitable community projects, including veterans-to-farmer programs and affordable housing. (See, e.g., Exhibits "__".)

12. Plaintiff Francis Arthur Yakel is an individual residing in Westerlo, New York. He has been directly impacted by Defendants' harassment, surveillance, U-Haul-related conduct, and interference with access to property and equipment tied to CHMF's charitable goals. (See, e.g., Exhibits "__".)

13. Defendant Athanasios ("Thanos") Dimadis Kotsidis is, upon information and belief, an adult resident of Greece, Brussels, Belgium, and/or the District of Columbia. He owns 14 Elm Street, Philmont, New York, which is directly adjacent from Plaintiff Hamza's residence, and holds positions including Executive Director of the American Press Correspondents and adjunct professor at George Washington University. (Exhibits "A," "B," "C".) He is sued in his individual capacity.

14. Defendant Maroula ("Marou") Kotsidou is an adult foreign national from Greece, associated with Thanos and with 14 Elm Street. She is sued in her individual capacity. (Exhibit "D".)

15. Defendant Village of Philmont is a municipal corporation in Columbia County, New York, responsible for the Philmont Police Department and for policymaking and supervision of its officers, trustees, and employees.

16. Defendant Chief Vernon Doyle was, at relevant times, Chief of the Philmont Police Department, acting under color of state law. He is sued in his individual and official capacities.

17. Defendants Jason Detzel, Bob MacFarlane, Philip Tkacy, Douglas Cropper, Carla Ingersoll, and Morgan Klima were, at relevant times, Village trustees, police officers, or municipal officials/employees acting under color of state law. They are sued in their individual capacities; where appropriate, official-capacity claims are asserted against the Village.

18. Defendant U-Haul, Inc. and Hudson Rentals and Garden Design are corporate entities engaged in rental of trucks and storage equipment and is sued based on its role in the U-Haul-related events at or near Elm Street, as detailed below.

19. Defendant Hudson Rentals and Garden Design is a business entity, upon information and belief, is a franchise of U-Haul and directly rented the U-Haul equipment and participate in the acts by allowing the conduct to continue unabated knowing their rental trucks were involved and damaged during several incidents and were involved or directly/indirectly participated in acts that interfered with Plaintiffs' property rights and use of Elm Street property

even has Plaintiff Hamza and State Police notified them of their aggregate acts.

20. Defendant New York State Police (NYSP) is a state law-enforcement agency. Plaintiffs bring claims against NYSP under 42 U.S.C. § 1983 only to the extent permitted for declaratory and injunctive relief and under state law as appropriate.

21. Defendant Trooper Miguel Rodriguez was, at relevant times, a NYSP Trooper acting under color of state law in connection with an August 1, 2025, arrest and related matters described below. He is sued in his individual capacity and for prospective relief in his official capacity as permitted by law.

22. Defendant Chris Liberati-Conant is, and was at all relevant times, the District Attorney of Columbia County, New York. He is sued (a) in his individual capacity for non-advocacy, administrative, and policy-making acts and (b) in his official capacity for prospective injunctive and declaratory relief concerning ongoing practices of the DAO.

23. Defendant Zechariah Davidson-Cunningham is, upon information and belief, The Chief of Staff within the Columbia County DAO who participated in intake, maintenance, and communications regarding Plaintiff Hamza's Menacing 3° case and related matters. He is sued in his individual capacity.

24. At all times relevant, the individual state and municipal Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983.

FACTUAL ALLEGATIONS

A.    Elm Street Properties; Thanos & Marou's Acquisition of 14 Elm Street

25.    Thanos purchased 14 Elm Street, Philmont, New York on or about June 7, 2022, for approximately $312,500, financed through a mortgage recorded in Columbia County. (Exhibits "A," "B".)

26.    Plaintiff Hamza resides at or near 16 Elm Street, directly across from 14 Elm Street, and CHMF owns or controls interests in that property for charitable purposes. (Exhibits "__".)

27.    Plaintiff Yakel, a close associate and co-Plaintiff, has provided labor, support, and financial assistance to CHMF-related renovations and projects at and around 16 Elm Street, and frequently visited or stayed there.

28.    After acquiring 14 Elm Street, Thanos and Marou began a pattern of conduct directed at Plaintiffs designed to interfere with the use, enjoyment, and charitable development of 16 Elm Street.

B.    Surveillance, Harassment, False Reports & Misuse of Agencies

29.    For months, Thanos and Marou aimed cameras at Plaintiffs' doors, bedroom windows, and private backyard areas, capturing video and still images of Plaintiffs, their guests, and their comings and goings, including sensitive moments connected to family matters and construction work. (See, e.g., Exhibits "__" – photographs, screenshots, and video stills.)

30.    Thanos and Marou repeatedly obstructed or attempted to obstruct vehicular and pedestrian access to 16 Elm Street, including blocking driveways,

interfering with construction deliveries, and using complaints to officials to frustrate CHMF's efforts to create safe off-street parking and ADA-compliant access. (Exhibits "__".)

31. They made serial complaints to various agencies—Village of Philmont officials, Philmont Police, New York State Police, and New York State DEC—alleging environmental violations, zoning violations, and criminal conduct by Plaintiffs that were exaggerated, fabricated, or wholly false. (See, e.g., Exhibits "__" – DEC reports, police reports, FOIL responses.)

32. DEC officers and other officials responded to some of these complaints and initiated investigations and/or enforcement actions that, upon information and belief, were premised on false information from Thanos and Marou and were selectively pursued against Plaintiffs while similar or worse conditions nearby were ignored. (Exhibits "__".) Plaintiffs do not name DEC as a defendant but reference this conduct to show the breadth of the harassment and the pattern of selective enforcement.

33. Thanos and Marou publicly and privately defamed Plaintiffs by spreading statements accusing them of criminal behavior, dishonesty, and instability, including in communications to neighbors, public officials, and third parties in the media and philanthropic community, damaging Hamza's reputation and CHMF's donor relations.

### C.    Village, Police, and U-Haul / Property Interference

34.    Village of Philmont officials—including Trustees Detzel, MacFarlane, and others—were repeatedly notified of the ongoing surveillance and harassment emanating from 14 Elm Street. Plaintiffs submitted emails, letters, and requests for action and relief. (Exhibits "__".)

35.    Instead of providing even-handed support or enforcing neutral rules, the Village and its agents routinely took Thanos and Marou's side, treating Plaintiffs' own reports as nuisances, delaying responses to FOIL requests, and selectively applying ordinances to Plaintiffs while overlooking comparable conduct by others. (Exhibits "__".)

36.    The Philmont Police Department, under Chief Doyle, responded to multiple calls and complaints but failed to curb Thanos and Marou's surveillance and instead used the dispute to scrutinize Plaintiffs' vehicles, property, and conduct, including threatened towing of vehicles and ticketing that diverged from standard practice and from the treatment of similarly situated neighbors. (Exhibits "__".)

37.    U-Haul, Inc. and Hudson Rentals and Garden Design were involved in actions related to a U-Haul truck and equipment on or near Elm Street that Thanos and Marou used as pretext for further complaints, obstruction, and allegations against Plaintiffs, with resulting interference in Plaintiffs' property rights and CHMF operations. (Exhibits "__".)

D.     **Denial of Hamza's Volunteer Firefighter Application**

38.     Plaintiff Hamza applied to become a volunteer firefighter with the Village of Philmont Fire Department. The internal fire-department membership board unanimously approved his application, and he was told he would be a "valuable and welcome addition."

39.     Fire Department board members expressed their dire need for volunteers and viewed Plaintiff Hamza as a valuable member of the fire department, enjoyed his personality and recognized that he had been trained in fire fighting on aircraft and emergency management while working with United Airlines.

40.     The final step required approval by the Village Board of Trustees. Instead of following custom (providing reasons if an applicant is denied), the Trustees rejected Hamza's application without explanation.

41.     In an informal conversation, Trustee Detzel indicated that the rejection stemmed from a perception that Hamza was a "rabble rouser" tied to his complaints, FOIL requests, and litigation—evidence of viewpoint-based retaliation and discrimination.

42.     Plaintiff gives rise to this situation as a point of reference.  As a newly arrive resident to Plainitff, Plaintiff wanted to show his support for the community by volunteering with the Fire Department, to meet and spend with other community members and leaders within the Fire Department and accomplish a long-time dream of being a Fire Fighter.

### E.    DAO Notice, Protected Petitioning, and August 1, 2025 Arrest

43.    As the Elm Street conflict escalated, Plaintiff Hamza repeatedly petitioned the Columbia County District Attorney's Office—through emails, letters, FOIL requests, and filings—requesting action concerning stalking, surveillance, false reports, and harassment by Thanos and Marou and the spillover of that conduct into Family Court and other proceedings. (See, e.g., Exhibits "__" – July–August 2025 emails.)

44.    These communications were core First Amendment activity—petitioning for redress of grievances and reporting suspected criminal conduct.

45.    Rather than provide neutral intake and evaluate charges against Thanos and Marou, the DAO, through District Attorney Liberati-Conant and staffer Davidson- Cunningham, effectively stonewalled Hamza's complaints, routed them in circles, and allowed Defendants' misuse of agencies to continue unabated. (Exhibits "__".)

46.    Plaintiffs Hamza and Yakel informed Defendant Davidson-Cunningham that Plaintiff Yakel had lost his job with Poured Candle Bar in Hudson, New York, a job for which he was passionate about due to blackmail/extortion of Ricky Tiscareno, the owner of Poured Candle Bar; Defendant Thanos communicated with Ricky Tiscareno via social media, email, and telephone threatening Ricky post slanderous selectively edited videos of Plaintiff Yakel and make fabricated claims: "is this the type of people who work for Poured Candle Bar." (Exhibit "___")

47. Plaintiff Hamza also informed Defendant Davidson that social media posts by Defendant Thanos exposed sensitive child custody related information which concerned Plaintiff Hamza as Plaintiff Hamza's ex-husband, William Yandik, pursued a congressional bid in 2016 and was highly recognized around Columbia County since that is where he was able to secure a win during the Democratic Primary in NY-19.

48. On August 1, 2025, officers—including Trooper Rodriguez—arrived at Hamza's home and seized him on a Menacing 3° charge arising from allegations connected to the Elm Street dispute. No contemporaneous warrant or probable-cause documentation was shown. (The menacing related incident continues to plague Plaintiff Hamza as it has not been resolved even as he as attempted to serve three motions to dismiss to District Attorney's office and filed a "writ of mandamus" style action in New York State Supreme Court). (Exhibit "___")

49. Hamza was subjected to custodial questioning without Miranda warnings, and the timing of the arrest, its execution, and its maintenance reflected retaliatory and selective motives tied to his ongoing speech and previous federal filings. (Exhibits "__".)

## F.  DAO's Continued Retaliation; Conflict of Interest; Speedy Trial

50. At the time of the Menacing 3° prosecution, Hamza had pending federal civil rights litigation naming District Attorney Liberati-Conant as a defendant based on related conduct in Columbia County.

51. Despite this direct conflict, Liberati-Conant refused to recuse or to ensure a neutral, conflict-free prosecutor handled Hamza's case. Instead, he and Davidson-Cunningham continued to oversee intake and decisions, allowing the case to remain pending without meaningful progress toward trial or dismissal. (Exhibits "__".)

52. The Philmont Village Justice recused; the Public Defender's Office withdrew; and yet the DAO did not arrange a conflict-free prosecution. Hamza raised this conflict in state-court and federal filings, but it went unremedied while the case remained as a sword hanging over him. (Exhibits "__".)

53. From commencement of the Menacing 3° charge through at least mid-November 2025, the DAO took little or no action to bring the case to trial or dismiss it, despite Hamza's motion detailing delays and seeking dismissal on statutory and constitutional speedy-trial grounds. (Exhibits "__".)

54. The prolonged maintenance of the charge, without timely trial or dismissal, chilled Hamza's speech, burdened his parenting and reputation, and amplified the harm from Thanos and Marou's underlying harassment and false statements.

## G.   Damages to Plaintiffs and CHMF

55. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered:

   a. Loss of use and enjoyment of 16 Elm Street due to surveillance, obstruction, and hostility;

b. Severe emotional distress and anxiety related to ongoing surveillance, baseless enforcement, and fear of future retaliation;

c. Damage to Hamza's reputation, both locally and in professional and philanthropic circles, including chilled donations to CHMF and loss of business/charitable opportunities;

d. Interference with Hamza's relationship with his child, including the importation of false narratives and accusations into Family Court and evaluation processes;

e. Lost opportunity to serve as a volunteer firefighter and associated stigma;

f. Legal costs, FOIL fees, and time spent responding to baseless reports and charges; and

g. Other tangible and intangible harms to be proven at trial.

56.    Plaintiffs incorporate and rely on their extensive Exhibits A compilation (approximately 700+ pages) and labeled exhibits from prior complaints as documentary support for these factual allegations.

## CAUSES OF ACTION

## COUNT I – FIRST AMENDMENT RETALIATION

## (42 U.S.C. § 1983)

*(Against Village of Philmont officials, NYSP/Trooper Rodriguez, DAO Defendants Liberati-Conant & Davidson-Cunningham in their individual capacities; prospective relief against DA in official capacity; and against Thanos & Marou via joint action)*

57. Plaintiffs repeat and reallege all preceding paragraphs.

58. Plaintiff Hamza engaged in protected First Amendment activity, including:

   a. filing FOIL requests;

   b. submitting complaints and petitions to municipal, state, and prosecutorial authorities;

   c. speaking publicly and to officials about corruption, harassment, and equal protection; and

   d. filing federal and state lawsuits.

59. Defendants, acting individually and jointly, retaliated against this protected speech by, inter alia:

   a. denying Hamza's firefighter application based on viewpoint;

   b. maintaining and using surveillance and false reports to instigate enforcement;

   c. initiating and maintaining the Menacing 3° prosecution;

   d. selectively enforcing vehicle, zoning, environmental, and related laws; and;

   e. using their official positions to discredit and isolate Plaintiffs.

60.  This retaliatory conduct would chill a person of ordinary firmness from continuing to engage in protected speech.

61.  Plaintiffs' protected activity was a substantial or motivating factor for the adverse actions. The temporal proximity, expressed hostility (e.g., "rabble rouser" comments), and pattern of conduct strongly support this inference.

62.  Defendants' actions violated Plaintiffs' rights under the First Amendment, actionable via § 1983. Plaintiffs seek compensatory and punitive damages (where permitted) and declaratory and injunctive relief.

## COUNT II – EQUAL PROTECTION

## (SELECTIVE ENFORCEMENT / CLASS-OF-ONE)

## (42 U.S.C. § 1983)

*(Against all state and municipal individual-capacity Defendants; prospective relief vs. Village, NYSP, and DA in official capacities)*

63. Plaintiffs repeat and reallege all preceding paragraphs.

64. Defendants intentionally treated Plaintiffs differently from similarly situated individuals in the Village of Philmont and Columbia County with no rational basis, including selectively enforcing codes, traffic/parking rules, and criminal statutes against Plaintiffs while ignoring comparable or worse conduct by others.

65. The denial of Hamza's firefighter application, the refusal to curb Thanos and Marou's surveillance, the leveraging of DEC and police investigations against Plaintiffs, and the maintenance of the Menacing 3° prosecution reflect class-of-one and class-based equal-protection violations.

66. This disparate treatment was motivated by animus toward Hamza's protected speech, national origin, sexual orientation, and/or perceived status, and by animus toward Plaintiffs as critics of local power structures.

67. Defendants' conduct violated the Equal Protection Clause, causing Plaintiffs damages and entitling them to declaratory and injunctive relief.

## COUNT III – PROCEDURAL & SUBSTANTIVE DUE PROCESS

### (42 U.S.C. § 1983; Fourteenth Amendment)

*(Against DAO Defendants, Village Officials, NYSP, and joint actors)*

68. Plaintiffs repeat and reallege all preceding paragraphs.

69. The irregular home arrest, maintenance of criminal charges without timely trial or dismissal, refusal to provide neutral prosecutorial decision making, and weaponization of investigations and enforcement actions against Plaintiffs violated their procedural and substantive due-process rights.

70. Defendants' conduct shocks the conscience and is not justified by a legitimate government interest.

## COUNT IV – FOURTH AMENDMENT

## (UNREASONABLE SEIZURE / MAINTENANCE OF PROCEEDINGS)

### (42 U.S.C. § 1983)

*(Against NYSP/Trooper Rodriguez, DAO Defendants, and Village Actors)*

71.   Plaintiffs repeat and reallege all preceding paragraphs.

72.   The August 1, 2025 home arrest and continued restraint on Hamza through pending criminal charges constituted seizures under the Fourth Amendment.

73.   These seizures were unreasonable because they were motivated by retaliation and selective enforcement, lacked adequate probable-cause basis, and were maintained despite exculpatory context.

## COUNT V – CUSTODIAL INTERROGATION & SELF-INCRIMINATION

### (Fifth & Fourteenth Amendments; 42 U.S.C. § 1983)

*(Against NYSP/Trooper Rodriguez and DAO Defendants)*

74.    Plaintiffs repeat and reallege all preceding paragraphs.

75.    Hamza was subjected to custodial questioning without adequate Miranda warnings, and statements were sought or used in a manner that violated his privilege against self-incrimination and due process.

## COUNT VI – 42 U.S.C. § 1983 CONSPIRACY

*(Against all individual-capacity Defendants)*

76. Plaintiffs repeat and reallege all preceding paragraphs.

77. Defendants reached an agreement, tacit or express, to deprive Plaintiffs of their constitutional rights by: (a) using Thanos and Marou's surveillance and reports as a pipeline to law enforcement and the DAO; (b) selectively targeting Plaintiffs with tickets, investigations, and criminal charges; (c) denying equal access to volunteer and civic opportunities; and (d) maintaining prosecutions and investigations as leverage.

78. Overt acts in furtherance of this conspiracy included the coordinated pattern of complaints, enforcement actions, and prosecutorial decisions described herein.

## COUNT VII – 42 U.S.C. § 1985(3) CONSPIRACY

*(Class-Based / Invidious Discrimination)*

79. Plaintiffs repeat and reallege all preceding paragraphs.

80. Defendants conspired, in part, based on animus related to Hamza's national origin, perceived ethnicity, sexual orientation, and/or status as a vocal critic of local officials, to deprive him of equal protection and equal privileges and immunities.

81. This conspiracy resulted in concrete injuries as described above.

## COUNT VIII – MONELL & SUPERVISORY LIABILITY

### (42 U.S.C. § 1983)

*(Against Village of Philmont, NYSP, and DA in Official Capacity)*

82.   Plaintiffs repeat and reallege all preceding paragraphs.

83.   The constitutional violations described above were caused by policies, customs, or practices of the Village of Philmont, NYSP, and the DAO, including:

   a.   failure to train and supervise officers on neutral handling of neighbor disputes and petitioning;

   b.   tolerance of selective enforcement;

   c.   refusal to recuse conflicted prosecutors; and

   d.   a pattern of ignoring or dismissing complaints from disfavored citizens.

84.   Supervisory officials, including Chief Doyle and DA Liberati-Conant, knew of and condoned these practices.

## COUNT IX – DENIAL OF NEUTRAL, CONFLICT-FREE PROSECUTOR

## (42 U.S.C. § 1983; Fourteenth Amendment)

*(Against DA Liberati-Conant – individual & official capacities)*

85.    Plaintiffs repeat and reallege all preceding paragraphs.

86.    Liberati-Conant's refusal to recuse or arrange for a neutral prosecutor in Hamza's Menacing 3° case, despite being a named defendant in related federal civil rights litigation, violated Hamza's due-process right to a fair and impartial prosecutor.

## COUNT X – DENIAL OF STATUTORY & CONSTITUTIONAL SPEEDY TRIAL;

## RETALIATORY FAILURE TO TIMELY PROSECUTE OR DISMISS

### (42 U.S.C. § 1983; Sixth & Fourteenth Amendments)

*(Against DAO Defendants & Village Actors)*

87.     Plaintiffs repeat and reallege all preceding paragraphs.

88.     The DAO's extended failure to bring Hamza's Menacing 3° case to trial or dismissal, while keeping it pending to chill his speech and participation in Family Court and other matters, violated his speedy-trial rights under state law and the Constitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A. Declare that Defendants' actions violated Plaintiffs' rights under the United States Constitution and 42 U.S.C. §§ 1983 and 1985(3);

B. Enjoin Defendants, in their official capacities, from continuing the retaliatory and discriminatory practices alleged herein, including:

    a. selective enforcement of laws against Plaintiffs;

    b. maintenance of retaliatory prosecutions;

    c. refusal to provide neutral, conflict-free prosecutorial decision-making; and

    d. tolerance of targeted surveillance and harassment in neighbor disputes;

C. Order appropriate expungement, correction, or annotation of records created or maintained as a result of unconstitutional actions;

D. Award Plaintiffs compensatory damages in an amount to be determined at trial, including damages for emotional distress, reputational harm, and economic losses;

E. Award punitive damages against individual Defendants where permitted by law;

F. Award costs of suit and, if counsel appears, reasonable attorney's fees under 42 U.S.C. § 1988;

G. Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.


Dated:        8 Philmont 2025
              Philmont, New York



_____
H.E. AMIR M. HAMZA
16 Elm Street
P.O. Box 281
Philmont, NY 12565
Tel: (702) 592-2647
Plaintiff Pro Se



_____
FRANCIS ARTHUR YAKEL
Plaintiff Pro Se

## VERIFICATION (Pro Se)

I, H.E. Amir M. Hamza, am a Plaintiff in this action. I have read the foregoing Consolidated Complaint and know its contents. The factual allegations are true to the best of my knowledge, information, and belief, and where made on information and belief, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.


_____

H.E. AMIR M. HAMZA


I, Francis Arthur Yakel, declare under penalty of perjury that the foregoing is true

and correct as to the allegations concerning me.

Executed on 8 December 2025, at Westerlo, New York.


_____

FRANCIS ARTHUR YAKEL